**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| JAMES LAURY, JR., <br><br> Petitioner, <br><br> v. <br><br> MARYLAND ATTORNEY GENERAL, WARDEN ACUFF, <br><br> Respondents. | Civil Action No.: SAG-21-226 |

**MEMORANDUM OPINION**

In response to the petition for writ of habeas corpus filed by James Laury, Jr., respondents assert that all but one of the claims raised are unexhausted and procedurally defaulted. ECF 4. This court advised Laury of his right to file a reply to demonstrate why, despite the procedural default, his claims should be considered by this court. ECF 5. Laury filed a reply (ECF 6) and the matter is now ripe for this court's review. No hearing is deemed necessary for resolution of the matters pending. *See* Local Rule 105.6 (D. Md. 2021), *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)). For the reasons set forth below, the petition shall be denied and a certificate of appealability shall not issue.

**BACKGROUND**

On October 5, 2006, Laury was convicted by a jury sitting in the Circuit Court for Baltimore County on charges of second-degree murder, use of a handgun in a crime of violence, and second-degree assault. ECF 4-1 at 154. The Maryland Court of Special Appeals summarized the underlying facts as follows:

> On October 5, 2006, after a jury trial in the Circuit Court for Baltimore County, James Alphonso Laury, Jr., appellant, was convicted of second-degree murder, second degree assault, and use of a handgun in the commission of a crime of

> violence. A sentencing hearing was held on December 21, 2006. *The precise terms of the sentence are the subject of this appeal.* No notice of appeal was filed. In a post-conviction proceeding, appellant was granted the right to file a belated appeal, and this timely appeal followed.
>
> ***
>
> This appeal arises out of the 2005 shooting death of Earl Washington Barnes, Jr., also known as Josh Barnes, in the Randallstown area of Baltimore County. Bames died of a "[g]unshot wound to the head with complications" and the manner of death was homicide. During an autopsy, a "[c]aliber .25 auto-fired bullet" was recovered from Barnes's head. Police recovered six 9 mm spent shell casings and two .25 caliber spent cartridge cases from the scene of the shooting. Ronnie Robinson admitted that he was present at the scene of the shooting and fired a 9 mm gun in the air to scare away two men who were assaulting Josh Barnes. Later testing determined that the six 9 mm spent shell casings collected at the scene of the shooting had been fired from Robinson's gun.
>
> Gregory Banks pleaded guilty to second-degree assault and agreed to testify as a witness for the State. On the night of the shooting, he arrived at the home of Mia Wilson with Laury and LaDavia Dempsey. According to Banks, he and Laury went there to confront and beat up Barnes, who had been "disrespecting" and "cussing . . . out" Wilson, who was Dempsey's friend. Laury had a gun, which he asked Banks to hold once they arrived at Wilson's house. Banks gave the gun to Dempsey before he and Laury started beating up Barnes. When someone started shooting, Banks, Dempsey, and Laury ran back towards their car. As he was running, Banks told Dempsey to give him the gun, but she refused. Laury then took the gun from Dempsey and started shooting. Thus, it was the State's theory that Laury fired the bullet that killed Barnes.

ECF 4-1 at 152-53 (emphasis supplied).

On December 21, 2006, Laury was sentenced by the Circuit Court for Baltimore County. ECF 4-2 at 1. At the sentencing hearing the State asked the court "for a sentence of 50 years, 30 for the second-degree murder and 20 for the handgun violation, to be served consecutively." ECF 4-2 at 10. Defense counsel asked the court to impose a "20-year sentence on the second-degree murder count, and five years without parole on the use of a handgun count to run concurrent." *Id*. at 13-14. Prior to imposing sentence, the presiding judge commented that the crime Laury

committed was "a senseless killing" and wondered "why young members of our society today need and desire to carry guns around." *Id*. at 15. The judge further stated that:

> I don't understand the senseless violence. I don't understand the need to puff out your chest and harm other people for nothing.
>
> I don't know. You know, I have a son not too much different from your age, and if I had to walk up like your father did – well, I probably be like your mother. I probably couldn't come up.
>
> But I would. I'd probably try to suck it up. But I couldn't stand there and talk about my son without crying.
>
> And it's devastating to the Barnes family, it's devastating to your family, and all for nothing. All for nothing.
>
> And it's devastating to you, too, now, because you're going [to] prison. But Mr. Barnes probably would love to go to prison at this point, as opposed to being laid to rest.

ECF 4-2 at 17.

The sentencing transcript reflects the following sentences imposed by the court:

> THE COURT: . . . Count 1 [second-degree murder], three years Department of Correction.
>
> Count 2 [use of a handgun], 30 years Department of Correction, five years without parole, and I will run it consecutive.
>
> I am going to refer him to the Patuxent Youth Offender Program. All right?
>
> You have to because of the nature of, at least, Count 1, you must serve 50 percent of that sentence before you're eligible for parole because it's under the Violent Crime statute.

ECF No. 4-2 at 19. The transcript is at odds with other records related to the case.

Laury filed a petition for post-conviction relief on January 15, 2015. ECF 4-1 at 40-52. Among the claims raised in his petition, Laury alleged that trial counsel was ineffective for failing to file a notice of appeal and for failing to file a motion for modification of sentence. *Id*. at 43-46; 49-50. The petition was supplemented on July 9, 2015. *Id*. at 53-61. Laury added another claim

3

of ineffective assistance of counsel in connection with trial counsel's failure to object to the State's "improper rebuttal argument" regarding reasonable doubt. *Id*. at 53.

A hearing was held on Laury's post-conviction petition on August 7, 2015. The post-conviction court bifurcated the proceeding and granted Laury the opportunity to file a belated appeal, holding the remaining claims in abeyance pending the outcome of Laury's appeal. *Id*. at 62.

The issues Laury raised on appeal were: whether the appellate court should issue an order correcting the commitment record for the sentence imposed for second-degree murder; whether the sentence for use of a handgun should be vacated because it exceeded the statutory maximum; and whether the trial court erred when it declined to suppress the search of Laury's cell phone. ECF 4-1 at 152. Prior to the Court of Special Appeals issuing its decision, the court reporter issued a corrected transcript changing the sentence imposed for the handgun offense to 20 years, accurately reflecting the court reporter's notes and the audio recording of the proceeding. *Id*. at 148-49.

The appellate court first noted that the "case history portion of the docket entries indicates that Laury was convicted of count one, second-degree murder and sentenced to . . . a term of 30 years." ECF 4-1 at 156. The case history also reflected that Laury was convicted on "counts 2 and 3, both of which charged him with use of a handgun in the commission of a felony" and for count 2, Laury was sentenced to a term of twenty years with the first five years to be served without possibility of parole and which was made consecutive to the 30 year term. *Id*. Laury was given credit for 541 days served prior to conviction. *Id*. at 157. Laury's commitment record also reflects that the court sentenced him to thirty years for second-degree murder and to a consecutive twenty-year sentence for use of a handgun. *Id*.

In holding that the sentencing transcript erroneously reflects that Laury was sentenced to three years for second-degree murder, the appellate court reasoned:

> If we were to find that the three-year sentenced reflected in the transcript was accurate, we would have to ignore the judge's comments, the fact that the sentence was seventeen years less than what the defense argued for and twenty-seven years less than what the State requested, and the fact that the prosecutor did not raise any objection to a sentence that deviated so wildly from the State's recommendation and even from the defense's request.
>
> Moreover, the three-year sentence for second-degree murder that is reflected in the transcript is illogical. There is nothing else in the record to justify the court's show of such incredible leniency with respect to the sentence for second-degree murder while imposing the maximum sentence for the handgun conviction.
>
> For these reasons, we conclude that the three-year sentence for second-degree murder that is reflected in the transcript is erroneous and that the thirty-year sentence for that crime, reflected in the docket entries and commitment record, was the sentence actually imposed. Because the court reporter issued a corrected transcript showing the correct sentence of twenty years for use of a handgun, which is both consistent with the docket entries and the commitment record, and within the statutory maximum, Laury's contention with regard to that sentence is moot.

ECF 4-1 at 159-60.

The Court of Special Appeals denied relief on all of the grounds raised by Laury in his belated appeal and the Court of Appeals denied his petition for certiorari on June 21, 2017. ECF 4-1 at 189.

A second post-conviction proceeding was held to consider Laury's remaining claims. On September 26, 2019, a post-conviction hearing was held in the Circuit Court for Baltimore County. ECF 4-1 at 190. The remaining claims asserted concerned ineffective assistance of trial counsel. *Id*. at 192-93. Specifically, Laury alleged that counsel rendered ineffective assistance when counsel gave bad advice regarding the merits of taking the plea offer versus going to trial; by failing to file a motion for modification of sentence; and by failing to object to the State's improper rebuttal closing argument concerning the meaning of reasonable doubt. *Id*. On January 10, 2020,

5

the post-conviction court granted relief on Laury's claim regarding the motion for modification of sentence, allowing him the opportunity to file a motion, but denied relief on the remaining two grounds asserted.[1]  *Id*. at 190-99.  A motion for modification of sentence was filed on Laury's behalf in February of 2020.  *Id*. at 200-02.  The motion was denied on February 27, 2020.  *Id*. at 203.

On February 12, 2021, Laury filed a pro se application for leave to appeal denial of post-conviction relief assigning error to the court's denial on his claims of ineffective assistance of counsel.  ECF 4-1 at 204-11; 214 -16 (amended application).  Because the application for leave to appeal was filed more than a year after the due date for such a pleading, the application was denied.  *Id*. at 217-218.

In his petition for writ of habeas corpus filed in this court, Laury asserts the following claims: the trial court erred when it sentenced petitioner to 30 years with the first five no parole which is 10 years above the 20-year maximum for handgun offense; the Court of Special Appeals erred when it declined to order a correction to the commitment record and by finding the transcript for the sentencing proceeding was clearly incorrect; and trial counsel rendered ineffective assistance of counsel when he failed: to file a notice of appeal; to properly advise Laury on the merits of taking the plea offer by the State versus going to trial; to file a motion for modification of sentence; and to object to improper argument by the State regarding the meaning of reasonable doubt.  ECF 1 at 5-9.  According to respondents the only claim that is properly before this court is his claim that the Court of Special Appeals erred when it declined to order a correction to the commitment record and by finding the transcript was clearly incorrect.  ECF 4 at 13.  Respondents

---

[1]  The post-conviction court's grounds for denying relief will be examined below as necessary for this court's analysis.

further assert that the remaining claims are "unexhausted and/or procedurally defaulted" because Laury did not present those claims to Maryland's appellate courts. *Id.*

## STANDARDS OF REVIEW

**A.     Federal Habeas Standard**

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S.415, 419-20 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly*."* *Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

**B.	Exhaustion**

When filing a federal habeas corpus application under 28 U.S.C. § 2254, a petitioner must show that all of his claims have been presented to the state courts. 28 U.S.C. § 2254(b) and (c); *see also Preiser v. Rodriguez*, 411 U.S. 475, 491 (1973). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider it. For a person convicted of a criminal offense in Maryland this may be accomplished either on direct appeal or in post-conviction proceedings.

To exhaust a claim on direct appeal in non-capital cases, it must be raised in an appeal, if one is permitted, to the Maryland Court of Special Appeals and then to the Maryland Court of Appeals by way of a petition for writ of certiorari. *See* Md. Code Ann., Cts. & Jud. Proc. § 12-201 and § 12-301.

If an appeal of right is not permitted, as in cases where a guilty plea is entered, exhaustion can be accomplished by filing an application for leave to appeal to the Court of Special Appeals. Md. Code Ann., Cts. & Jud. Proc. § 12-302(e). If the Court of Special Appeals denies the application, there is no further review available and the claim is exhausted. Md. Code Ann., Cts. & Jud. Proc. § 12-202. However, if the application is granted but relief on the merits of the claim is denied, the petitioner must file a petition for writ of certiorari to the Court of Appeals. *Williams v. State*, 292 Md. 201, 210-11 (1981).

To exhaust a claim through post-conviction proceedings, it must be raised in a petition filed in the Circuit Court and in an application for leave to appeal to the Court of Special Appeals. Md. Code Ann., Crim. Proc. § 7-109. If the Court of Special Appeals denies the application, there is no further review available and the claim is exhausted. Md. Code Ann., Cts. & Jud. Proc. § 12-

202.  However, if the application is granted but relief on the merits of the claim is denied, the petitioner must file a petition for writ of certiorari to the Court of Appeals.  *Williams*, *supra*.

**C.    Procedural Default**

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies.  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).  A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule."  *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

> As the Fourth Circuit has explained:
>
> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim.  *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  *Id*. at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is

10

actually innocent.² *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Id*. (quoting *Murray*, 477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U S. 298, 314 (1995).

## ANALYSIS

### A.     Second-Degree Murder Sentence

Laury argues that the Court of Special Appeals erred when it decided that the sentencing transcript contained a clear error. As noted, respondents contend that this is the only claim properly before this court and add that the claim is without merit. The Court of Special Appeals' analysis of this claim relies largely on Maryland State law governing discrepancies between the sentencing transcript and other court records such as the docket report and the commitment record. Indeed, Laury does not cite any federal law or Supreme Court decision to support his claim that the appellate court's decision was improper. Federal habeas relief on this claim is unavailable unless Laury demonstrates that the factual determinations made by the Court of Special Appeals was objectively unreasonable in light of the evidence presented at the state court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

---

² Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray v. Carrier*, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id*.; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).

The Court of Special Appeals' factual determination was not unreasonable. Not only did the commitment record and docket entries reflect that Laury received a 30 year sentence, but the content of the sentencing transcript refutes any notion that the judge intended to sentence Laury to three-years, seventeen years less than what Laury's attorney requested and twenty-seven years below what was requested by the State. Everything stated by the presiding judge up to the point where sentence was imposed, indicated that his intention was to impose a sentence that fit the "senseless" violence that led to Laury's conviction. Further, Laury's application for review of sentence filed twenty days after the sentencing hearing conceded that the trial judge had "imposed the MAXIMUM sentence: Thirty (30) years to the Division of Correction and twenty (20) years consecutive to the first count for a total of fifty (50) years." ECF 4-1 at 39, ¶ 4. There is no unreasonable factual determination involved in rejecting Laury's claim, therefore federal habeas relief is denied on this claim.

**B.      Use of a Handgun Sentence**

Laury's claim that he was improperly sentenced to 30 years for use of a handgun which is ten years beyond Maryland's statutory maximum, is also without merit. Respondents assert that this claim is unexhausted because Laury did not raise it in his petition for writ of certiorari filed with the Maryland Court of Appeals following the Maryland Court of Special Appeals' finding that the claim was made moot by the correction of the transcript. ECF 4 at 25. Respondents further contend that the claim is procedurally defaulted as Laury no longer has an available avenue to present this claim to the Maryland courts. *Id*.

The basis for this claim is not entirely clear. Laury seems to fault his trial counsel for failing to object to the court's imposition of a 30-year sentence for use of a handgun and portrays that failure as evidence of his poor performance. ECF 1 at 9-10. However, as noted above, Laury's

application for review of sentence acknowledged that he was sentenced to 20-years for the handgun offense, not 30-years.  Whether the claim is unexhausted, procedurally defaulted or both, there is no discernible basis for granting federal habeas relief on this claim.

## C.     Ineffective Assistance of Counsel Claims

After Laury was afforded a second post-conviction hearing on his ineffective assistance of counsel claims and he was denied post-conviction relief.  He did not file a timely application for leave to appeal the denial of post-conviction relief.  *See* Md. Rule 8-205(b)(2) (requiring application for leave to appeal to be filed within 30 days after entry of the judgment from which appeal is sought).  The untimely application was dismissed pursuant to Md. Rule 8-602(c)(2).[3] Where a claim asserted in a federal habeas petition was rejected by a state court on a "state law ground that is independent of the federal question and adequate to support the judgment" the claim is procedurally defaulted.  *See Coleman*, 501 U.S. at 729.

Here, Laury's failure to file his application for leave to appeal within the time specified by Maryland law led to a procedural default of all of his ineffective assistance of counsel claims. Unless Laury demonstrates "cause for the default and actual prejudice as a result of the alleged" ineffective assistance of counsel, the merits of his claims may not be reached by this court. *Coleman*, 501 U.S. at 750.  In his reply, Laury asserts that after his post-conviction petition was denied on January 10, 2020, the library where he is incarcerated closed. ECF 6 at 2.  He states that the library closed on February 3, 2020 due to the COVID-19 pandemic and did not re-open until April 2021.  *Id*.  In Laury's view, he is entitled to have access to legal materials to assist him in filing "meaningful legal papers." *Id*.  He cites the closing of the library and his lack of access to

---

[3] Rule 8-602(c)(2) provides that the Maryland appellate courts "may dismiss an appeal if . . . the appellant has failed to comply with the requirements of Rule 8-205."

13

legal materials as circumstances that were beyond his control which caused him to miss the filing deadline for the application for leave to appeal. *Id*.

Two irrefutable facts weigh against Laury's assertion of cause: (1) he filed the application for leave to appeal in February of 2021, *see* ECF 4-1 at 204, two months before the prison law library re-opened; and (2) he was advised in detail by the Office of the Public Defender on how to file an application for leave to appeal the denial of post-conviction relief, *see id*. at 212-13. Laury's ability to draft and file the application for leave to appeal while the prison library was closed indicates that the library closure was not an impediment to his ability to draft and file legal pleadings. The detailed letter from the public defender's office demonstrates that Laury was not left twisting in the wind by counsel but was advised on how to proceed with an application for leave to appeal if he chose to do so. Thus, Laury has failed to establish cause for the procedural default.

Laury has offered nothing to establish that a fundamental miscarriage of justice would result if this court does not reach the merits of his ineffective assistance of counsel claims. In other words, Laury has not introduce new and credible evidence that he is actually innocent. *See Schlup*, 513 U.S. at 316. Having found no applicable exception, this court may not reach Laury's remaining claims that are procedurally defaulted. Accordingly, his petition shall be denied.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S.Ct. 759, 773 (February 22, 2017). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or

that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Because this court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied.  *See* 28 U. S.C.§ 2253(c)(2).  Laury may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate.  *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

## CONCLUSION

For the reasons stated, the petition for writ of habeas corpus is denied and this court declines to issue a certificate of appealability.  A separate order follows.


<u>August 13, 2021</u>                                    <u>          /s/                             </u>
Date                                                           Stephanie A. Gallagher
                                                                    United States District Judge